We'll hear argument first this morning in Case 13-1175, the City of Los Angeles v. Patel. Mr. Rosenkranz? Thank you, Mr. Chief Justice, and may it please the Court. This case is about whether to deprive scores of cities of one of the most effective tools that they have developed to deter human trafficking, prostitution, and drug crimes that have seized the ground in America's hotels and motels. The ordinance in question is the least intrusive inspection scheme that this Court has ever encountered. It is limited to showing the police a single book containing only information that the hotels transcribed specifically for the city and that they've been turning over to the police by operation of law for 150 years. Could you, first, two questions. Is the information that they've been keeping for 150 years the same? And then, secondly, can you give us a sense of the nature of the information that they've been keeping? Because looking at the requirements, the early information was basically somebody's name, and I'm not even sure their address. But today's information has, or today's registry and requirements have information that Federal law doesn't permit to be disclosed, like driver's license, credit card information. I mean, Federal law says you can't disclose that information. So isn't there a difference? It's not the same tradition over 150 years. You are right, Your Honor, that the amount of information has increased. The privacy interests, however, have been pretty much the same. It was name and address and the rate that they were charged and so forth. And that is the information that the hotels have argued is the most private. Sotomayor, all of the things that you say, the most effective tool for trafficking, prostitution, child molestation, none of that sounds like it's the purpose of the search is administrative. Well, it is administrative, Your Honor. And to understand why it's administrative, you have to focus first on the target. The target here is not people who are accused of crimes. The target is the motels and the hotels who are required to keep records, to record information. And why are they required to record the information? For the deterrent purpose. And the deterrent purpose more specifically is that criminals do not like to register. They do not like to record their information. So, Mr. Rosenkranz, are you saying then that the police can do this, can request these records on demand, and they don't have to have any reason at all, no reasonable suspicion, no probable cause, nothing, because the purpose is to deter people from staying in hotels who might do bad things? So there's nothing like a reasonable suspicion requirement. That's correct, Your Honor. It's the same rationale that this Court adopted in Berger, that frequent unannounced spot inspections are necessary in order to achieve that deterrent purpose. That if the hotels do not record all the names, and more specifically, they record most names but not the names of the guests that they know are criminals, there's no way to know, unless you have this frequent unannounced inspection, that someone is missing. So there's a real necessity here, as there was in Berger and in Biswell. Can you tell me how many prosecutions there have been, and I use the word both criminally or civil, for the failure to register people? Well, there have been numerous prosecutions. I can't tell you how many. The complaints in this case, which are in the beginning of the Joint Appendix, refer to the plaintiffs having been prosecuted multiple times or fined for failure to keep the records. And I just do want to underscore this point about necessity. The problem is not that the registers are empty. The problem is that the hotels decline to record the names of those who they know are criminals, or the motels do. But that has nothing to do with the free right to search. Those people who are refusing to do it are going to refuse to do it. A recordkeeping requirement has no constitutional challenge. What does is the unfettered access to that record. Agreed, Your Honor. And so let me just break it down. Those people who don't want to do it are not going to do it anyway. Exactly. Those people who don't want to do it go somewhere else or don't commit their crimes. But if they are forced to do it, which is to say the motel won't let them stay there unless they register, then they will not commit those crimes in the motels. And the only way to make sure that the motels are enforcing that obligation is to descend on them without notice, as Justice Ginsburg was saying, and frequently so that they never know when the police are going to come. Why? To make sure that they are indeed recording the information. And why is the real-time observation key? It's because, say the police show up and they have a register and they notice that room number 2 is unoccupied according to the register, but they see someone in room number 2. They know only from real-time observation that there is a violation here. If they get the register a month later, they have nothing to compare it. You mean they can walk up and down the halls and see that nobody is in a certain room? I don't know quite how you do that, of course, Justice. Well, Your Honor, the way it works in particular is you have room number 2 as if it's right there, but I suppose it's room number 1204. So motels, for example, are out in the open. You can sit there and see. What about my question about room 1204? You seem to say the police can wander all over the hotel. Well, the police may be allowed to wander around the hotel. They probably will not see much if what they're doing is wandering back and forth looking at particular rooms. I suppose in motels they can see what rooms have cars in front of them. And I suppose as to room 1204, they can see, usually behind the desk, what keys are missing, what rooms appear not to be occupied. That's correct, Your Honor. And that's why the real-time observation is so key, because you can't do that a month later. And that's why we have the same necessity. Sure, why? I mean, what you're saying is it's easier to prosecute, but it doesn't mean that you can't devote some resources and find this out.  And you watch people going in for two hours and leaving, and you keep a record of it. You can even stop those people who are leaving to ask them. There's a whole lot of law enforcement techniques that could be used to combat the situations you're talking about. But not nearly as effectively, Your Honor. Since when has the Fourth Amendment completely been abandoned to how effective the proof that the police can get at a moment should be? Well, Your Honor, that's not the test. But Dewey refers to the fact that it's not as effective. And it simply doesn't work, Your Honor. Let me give you an example. If all the police are doing is looking for who's in what room and what keys are missing, they don't actually know what to look for until long after the fact. They may be looking for the wrong thing. And there are many motels where they can't do it, for example, look at the keys because they're not available and easy to see. And so it's having the information right in front of them and then comparing it to things that they might be able to observe. But, Mr. Rosenkranz, why isn't this just like Barlow's, really, that it's not necessary on the following rationale? Number one, most people will consent so that you go, the police go into a hotel and say, we'd like to see your registry. Most people are going to consent. If somebody says no and there's a real basis for believing that the evidence is going to be altered or destroyed, you can seize it pending judicial review, or you can get an administrative warrant, ex parte, and conduct a surprise examination if you want to. So we talked about all of those things in Barlow's, about how why that suggested that these warrantless searches were not necessary. What makes this different? Rosenkranz, Your Honor, what makes this different is the distinction between Barlow's on the one hand and Berger, Dewey, Biswell, Colonnade on the other hand. And that is the movability of information. That is the transience of the information that you use to verify. In Barlow's, if there is an unsafe condition, there is an unsafe condition and it's hard to see. This Court said it also in C and distinguished, Biswell distinguished C on that ground. If you, if you, if it's the sort of condition that doesn't change over time, you can get a warrant and it doesn't affect your client. Kagan. What's going to change here? The registry is the registry. And as I just said, if in an unusual case you have the feeling that the hotel is complicit, you can make sure to freeze the registry. But that's going to be an unusual case. And mostly the registry is going to be there. And, you know, as I said, mostly people are going to consent to the extent not, you can go get a warrant. Well, Your Honor, what will, what changes is the information on the basis of which you draw that comparison. If you only compare the register, if you get the register a month later, you can't compare it to facts on the ground, to the cause. A month later doesn't, you know, it's an hour later. Well, you, you mean get a warrant within an hour? Warrants within an hour are not that easy to get, particularly if it's a written warrant. What's the probable cause for the warrant? Well, there is, that's. If you haven't seen the register, what's the probable cause? Right. There is no probable cause. What, do you have to have a policeman sit outside the hotel for days to, I mean, you don't have probable cause unless you know that there are people who are, you know, in the room for a short time who haven't registered. Right. That's exactly right. The warrants are for probable cause. That's why Berger and Biswell said, no, you don't need to get a warrant when you're doing an administrative inspection. If you prevail in this case, and a member of the Court sits down to write the opinion, does he or she have to use the phrase reasonable expectation of privacy and say there is no reasonable expectation of privacy in our society, in our culture, in our day? Or do we just forget that phrase? In a way, as we all know, it's circular. If we say there's a reasonable expectation, then there is. Well, Your Honor, the answer depends upon which Fourth Amendment rubric one uses. Under the Berger line of cases, the Court looks at the statute, asks is this a closely regulated business, was it necessary, is it a legitimate non-law enforcement purpose, and so forth. It's closely regulated. Is that another way to talk about reasonable expectation of privacy? Indeed, it is. We talked about that in the Katz case, the telephone booth case. I don't know. But I'm not sure that that's still a phrase that's necessary and required for us to address in an opinion like this. If the Court adopts the Berger rubric, what the Court was doing in Berger was saying, because this is so heavily regulated in the context of this case, because everyone knows that these registers have been reviewed by the police for 15 years. No one goes into the hotel business unaware that their registers will be inspected. Who's expectation of privacy are we talking about? We're talking only about the motels. Not the hotel guests, right? No, Your Honor. The motel, the plaintiffs have taken the position that this is not about the expectation of privacy of the guests. Yes, that's what I thought. But only about the hotel. Yes. You can't see my register. It's dear to me. Even though I have entered a business that for 115 years has revealed these registers and for 100 of those years actually revealed the registers to the guests. Suppose that there's a, Mr. Rosenkranz, suppose that there's a statute that says that the taxing authority, the IRS or the equivalent on the State level, that the taxing authority can go into businesses at any time and check payroll records. And the reason is that they need to conduct these surprise warrantless searches because there's a serious problem with businesses ginning up false payroll records. Is that constitutional? I would think not, Your Honor, at least not without more information. And the difference is there isn't this long history of the government reviewing payroll records. And secondly, or at least it's a closer question, and secondly, payroll records are not the sorts of things for which you need spot inspections. If someone comes up to a hiring. No, the government says that they do. The government says that if you wait until they submit everything at the end of the year, they'll falsify a lot of records. And we really need to see what's happening right now on the ground in real time. Well, Your Honor, either a payroll record is false or it's not. You don't need real-time verification to figure out if it's false. No, you do, because you don't want to give them the time to falsify things until the end of the year. I mean, we could have a thousand examples like this. And my answer is still the same. It doesn't have the same real-time need to verify against facts that are false. I don't know why not. Checking to see if people are actually registered. You don't know that until you see a person working. So you've got a construction site, you count the number of people, and you say, let me see your recordkeeping for your employees today. Well, Your Honor, that would be. That's a real-time need. But either the ultimate record that is submitted is false or it's not. You don't have the real-time ability to verify whether those records are correct. You just keep a register. You falsify the register the way you're saying these people work. My problem with the closely regulated is I don't see one regulation that's not applicable to virtually every public accommodation entity, whether it's a telephone call, a car company, or a day school, or a hospital. I mean, virtually all of these requirements that you list are part of the normal State regulation of entities that serve people. Is it your position now that once we say this is closely regulated, that everything is? No, Your Honor. That it serves the public in some way? No. And I see I'm eating to my rebuttal time, so if I may answer quickly. No. First of all, the closely regulated exception is not — is way more than just closely regulated. There are three other elements to it, and you need to demonstrate the necessity. You need to demonstrate that it's not a criminal justice purpose. And you need to demonstrate that there is an adequate substitute for a warrant. So if there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, counsel. Mr. Dreeben. Thank you, Mr. Chief Justice, and may it please the Court. This Court can resolve this case on a much narrower basis than it has used in looking at other administrative inspection schemes, such as the one in Barlow's. The Ninth Circuit itself recognized that this case did not involve an entry into the nonpublic working places of a business. It did not involve an entry into a residential property. It involved an entry only into the public lobby area of a motel and a brief inspection of the registry of the motel. Well, that doesn't seem very significant. I mean, it could well involve an entry into a drawer. We wouldn't normally say, well, because you can — our rule is not simply because you can get into a house, for example, that you're free to rummage through desks. That's certainly right. But what the — this statute requires is that the registry be produced for inspection. And the way in which the officer gets to the registry is to walk into the lobby. And so then I'm sorry. You're saying that if a police officer stands outside a house and says, bring me whatever it is I want from inside, and he brings it out, that's not a violation of the Fourth Amendment? Because he, under compulsion, tells the person, you have to bring me what's inside because I can't enter under the Fourth Amendment. Well, Justice Sotomayor, it would be a search. The reasonableness of it would depend on the facts. But what I point here is that this is — we're dealing here with businesses which have reduced expectations of privacy. And we are not dealing with entry into the nonpublic areas of the businesses, which is what Marshalls was concerned with, Colonnade, Biswell, Berger, all of those cases. So the Ninth Circuit itself did not apply the rules that govern those kinds of situations where the Court has sometimes said an administrative warrant is required and other times said it is not. This is a facial challenge. Now, are there any or a substantial number of instances in which the application of this statute would be constitutional? Well, I think there would, Justice Alito, if there were exigent circumstances that justify the access to the registry. And most importantly — But then you don't need the statute. Well, the statute helps because it informs the — No, if there are exigent circumstances, you can get a warrant. Yeah. Well, you don't have to get a warrant. So that doesn't work. No, I think it works, Justice Kennedy, in the sense that the statute provides encouragement for a potentially recalcitrant hotel owner to produce it because it's an offense for him not to. But more importantly, I think, for the Court's evaluation of the facial challenge issue is that there's no record in this case about what kind of privacy expectations actually exist with respect to hotel registries. It's largely a matter of conjecture, speculation, and everybody's intuition. I don't — I don't see why we've ever required more. All we've required is a person to say, this is my business record. And why do they have to prove more? Because — What are they supposed to prove? That they don't use — that they don't show it to anyone else? We've never required that. Well, I think that they should show that there's a certain degree of confidentiality associated with it, that they in fact — Well, there is today when the Federal law requires that you not disclose credit card information and driver's license information, and these registries contain that information. So you can't have it both ways. Well, the registries by law are required to have a driver's license information taken for people who are paying cash — That's right. — and requires the credit card information of people who are otherwise registering. Well, the registry doesn't have to have the credit card information unless they check in at a kiosk. And this, I think, brings up a very important point. What the Ninth Circuit did was facially invalidate this statute. It said that regardless of any facts, it can't be enforced against anyone. I assume that, you know, if the problem is license plates and credit card information and all of that, it's not up to the hotel to complain about that invasion of privacy. It's up to the guests, right? I would agree with that. And this case does not involve the guests. It's just the hotel who's objecting. It's just the hotel. And there is a range of situations in which different information is maintained in different ways. So I think that treating it as a facial challenge is problematic. But if you reach the merits, what the Ninth Circuit itself did is conclude that this case doesn't trigger the very strong safeguards that are triggered when there is an invasion of a nonpublic space of a business. They treat it as if it's an administrative subpoena case, which does have Fourth Amendment requirements associated with it. But those requirements are that the subpoena be relevant, that it be reasonable in scope, and that it be specific. And the Ninth Circuit conceded that all three of those requirements are satisfied. Section 4149 by itself establishes the relevance of the information for the administrative purpose that the statute serves. It is specific and it is narrow in scope. And anybody who goes into the hotel industry knows that that is an inspection that they are subjected to. The Ninth Circuit — How do you distinguish Marshall and Barlow? Do I have the right — do I have the right name? You do, Justice Kennedy. And the distinction which the Ninth Circuit itself drew is that involved entry into the nonpublic areas of a business, which exposes a much wider range of information to the inspection of the authorities. Marshall covered every industry in interstate commerce, and it allowed OSHA inspections without any limitation. And in that circumstance — I guess I don't understand that, Mr. Dreeben. You're saying that it makes a difference constitutionally whether you keep the registry at the front desk or in the back office? What I'm saying, Justice Kagan, is that the Ninth Circuit analyzed it precisely that way, that you can walk into the lobby of a hotel. This Court so said in the Lone Steer case. You're not invading any expectation of privacy. All you do is you ask the hotelkeeper, the front desk clerk, to show you the register, which can be done as — simply by just moving the computer screen so that the officer can see it. And that is the most minimal intrusion on privacy interests if they exist. Well, if I were running a hotel, I think I might have — prefer to have two uniformed detectives in the back room so the guest doesn't see it. I think it's quite intrusive. The Ninth Circuit treated it as a lesser degree of intrusion than an inspection of all of the private areas of the business. And that's why it applied the subpoena line of cases. But once you apply the subpoena line of cases, you realize that the statute itself serves the purposes that that line of cases is designed to serve. And the only remaining claim that's really — well, the judicial review would be very difficult to accomplish in this case because the whole purpose of this administrative scheme is we're not — you know, we regulate prostitutes, we regulate narcotics activity through the criminal law. The place where they are frequently conducting it are low-budget motels that have a strong incentive to take cash, not fill out a registry, and allow this kind of criminal activity to flourish. So the regulatory purpose of 4149 is to target not the criminals, but the place where they conduct their activity, and doing it in a classic administrative way. This is lawful activity. You can rent a room. You just have to not rent it to people for cash, for short terms, for no reservations, when they don't have an identification to show who they are. And you need to keep a record of what you're doing. And, Mr. Chief, I'm trying to figure out what you think is relevant here, so let me give you a hypo, which is say that it's not a hotel, but it's a hunting lodge, and there are record-keeping requirements about how much people shoot and when they shoot them and what they shoot and so forth and so on. And the Fish and Wildlife Service, or some State equivalent of that, says we do not — we do not want to rely on people reporting this to us at periodic points. We just want to make spot inspections, surprise inspections all the time. Would that be all right? It seems like a much more difficult case to me, Justice Kagan, in part because the — Is this a public hunting lodge? It's a private hunting lodge. Like, this is a private hotel. That's a big difference, isn't it? I will have to defer to the members of the Court on hunting lodges. But I think that the interest that's being served there is far weaker than the interest that's being served here, which is a genuine problem reflected in the fact that there are a hundred statutes like this across the country in different sounds. But that's how you're going to distinguish it, just because it's more important? Because the fish and wildlife people think that it's really awfully important to make sure that all these rules are — are complied with. I agree with that, Justice Kagan, but I do think that this Court, in its classic Fourth Amendment analysis, balances the government interest to be served against the nature of the intrusion. I don't know enough about the hunting lodges that you have in mind to really gauge the nature of the intrusion. I will say this, that a mere requirement that you expose books and records that you're required to keep as a regulatory matter and that no one disputes you're required to keep to a law enforcement officer in a public area of your facility, that's this case. There is no dispute here that you can require the hotel to keep the records. That is correct. Is that right? The hotels are not challenged in that. I think there would be a big dispute with regard to private hunting lodges, whether you could require them to keep the records. And there may be Second Amendment concerns that the Court would weigh in the balance. I — I think that the Court can resolve this case in an extremely narrow fashion. I — I think it's even more dangerous. Look at almost how many businesses, retail businesses, transact their recordkeeping in public areas. Talk about any shop in the country, they don't go to the back virtually, any of them, and transact their business, keep their credit card information. They put it right on the computer in front of them. So, I mean, it can't be that merely ask — intruding on someone's private information in a public place eliminates the Fourth Amendment. May I answer? I think you ask — ask three questions, Justice Sotomayor. First, the substantiality of the government interest. Second, the nature of the intrusion on privacy. And third, necessity. And there is a strong need in the case of these hotels where prostitution and narcotics activity flourish because criminals do not want to identify themselves when they check in to have regular, unannounced inspections to give the hotels the incentive to comply with the registration law. Thank you, counsel. Thank you. Mr. Goldstein. Mr. Chief Justice, and may it please the Court, we ask the Court to hold that the plaintiff is not going to go to the judge in advance and get a warrant, but instead that it merely needs to issue us a one-page subpoena. Now, we can object to that subpoena, but it's going to be enforced unless the city isn't actually implementing a legitimate administrative scheme because it's searching us to harass us or to investigate crime. Is it your position that there is no instance in which this statute and the implementation of it would be constitutional? It is because the hypothesis that you would use it for exigent circumstances or when you've waived the right to privacy by putting out on the desk don't actually involve the enforcement of the statute. What's necessary here, the value that's in the Fourth Amendment, is the requirement that there be a regularized scheme. Now, it's going to be a regularized scheme that either appears in the administrative rule itself. That doesn't exist here. There's no limit on when they can search, how often they can search, or the reason they can search. And if there isn't that, then we put a court into the process. We make pre-enforcement judicial review available. And the reason is the Fourth Amendment protects our sense of tranquility. The hotel owners, individuals in other contexts, businesses in other contexts need to know that beat officers aren't going to, at their whim, conduct these searches. Alitoso, we're going to get to the next part of this. Suppose that a city or a State wanted to establish an administrative inspection regime along the lines of Barlow's. What would it have to include in your judgment? Could the warrant be issued by an administrative law judge as opposed to a superior court judge in California? Yes. Would it require probable cause? No. Could they – could it be done without prior notice? Yes. Could you have different standards for different types of hotels? If there is that inspections for all hotels, but much more frequent inspections for hotels that rent by the hour, hotels that have a large number of guests who pay in cash, and so forth. Yes. All those things could be done. Now, if that's okay, it's really not clear to me what that would add to the ordinance that you have before us. That was – and Justice Kennedy asked how Barlow's plays out in this context. So Mr. Dreeben is half right in his answer. He is absolutely right that the Court has said, look, if you're not physically inspecting the premises, then you don't have to ahead of time get a warrant. And, Justice Scalia, it's not a probable cause criminal warrant. All the Court has required in this line of cases is that the government show that it's part of an ordinarily administrative scheme. But the second part is what's missing. And the key case is mentioned in passing by Mr. Dreeben. It hasn't gotten enough attention in the case. It's called Donovan v. Lone Steer. And it was decided by an opinion by then-Justice Rehnquist. It's a unanimous opinion. And it considers a circumstance very similar to this, and that is under the Fair Labor Standards Act, the government can do just what it does here, and that is it just doesn't have to do with employment records. And the reason this Court said that that comports with the Fourth Amendment is there's a balance, and that is that the government has to issue a subpoena to which the employer can object. And that accomplishes two things. The first is, without burdening the government, it interjects the possibility of judicial review, and that way you know that the enforcement officer can't do that. Ginsburg. Ginsburg. But what would be the nature of the objection? I'm going back to Mr. Rosenkranz's answer to my question. He said there is no notion of probable cause, reasonable cause. The hotel owner is required to keep these records, and that's not disputed. They're required to keep them. And so the police don't have to have any reason. What would be shown by some kind of a hearing? Sure, Your Honor. This line, this Court's consistent line of precedence, there are six cases that have dealt with this subpoena rule, have said the following, and that is the concern when you have a scheme like this one that doesn't tell the officer how often or when to search, and is that the officer will do two things that are forbidden by the Fourth Amendment. One is they'll do it in a harassing way, and the second is they'll use it for crime control. And the latter is a real concern here. The city is avowedly saying it wants to look at the record to, for example, find prostitutes or the johns who are involved in renting the rooms. And so that's why what you do is you let the police issue the subpoena. They don't go to the judge ahead of time. But the prospect that there can be an objection and that you can go to a judge is what protects the sense of tranquility of the business owner. But what's the purpose? You agree that it's constitutional to require the register. Absolutely. Kennedy, the fact that it's only interest is in law enforcement, I think, is a point in our favor. But just recognize that what Mr. Rosenkranz is describing as the scenario that gave rise to your question about Room 1202, we think is entirely inaccurate. So if I could just play out the hypothetical. His point is as follows. An officer shows up at a motel and sees someone in a room, sees the light on, and sees a woman in a room. He says, let's go and see what's going on in Room 1202. He says, let's go and see what's going on in Room 1202. We'll give him his best case. And what he wants to do then is to go and look and right then determine, look, there is a registration card for Room 2. Now, I don't know what that proves because he doesn't know that anything inappropriate is going on in Room 2. But it doesn't matter. What the officer does is he makes a record, there was someone in Room 2 on June 1st at 12 am. And then he comes back two days later and he serves the subpoena. There's no reason in the world, that doesn't give any advance notice to the motel owner. If he has a particular concern, then he can sequester the records so they can have them held separately if there's going to be an objection, which is extremely rare. There's no reason. His concern is about contemporaneous observation. That's not the issue in the case. He can sit outside and look outside the room. The issue in the case is do you have to go in and have no opportunity for a judge to be involved before you search the record? Scalia, seeing the light on doesn't prove anything unless you know that the hotel has not registered the person who is in the room. Justice Scalia, we're not going to be able to either require the register or inspect the register. Neither one of those is at issue. The question is, can they do that without giving us any opportunity to say to a judge what's actually going on in here is law enforcement or harassment. They've come in five times during the day. And that system, which is they issue the subpoena, right, they don't go to the judge ahead of time. They come up, they show, they give me a subpoena, right, and they say we want the records. And if there's an objection, the officer has made the observation about room 2, and they can go ahead, telephonic warrants are easy, but there's no reason that the subpoena objection can't be heard by a judge later on. He's already observed and made a note about what's going on in the hotel. Now, I will say they could fill in while he's running off getting his subpoena. They fill in. His subpoena is already there. Justice Scalia, the subpoena, he's not running off anywhere. The subpoena is simply handed at the desk. This is an administrative one-page piece of paper. But let me just say. Sotomayor, he has it in his pocket? Yes. All you're asking for all this litigation is just that the one who wants to inspect it just pulls out a piece of paper and hands it to him, and that makes it all okay. No. There's two parts to it, Justice Scalia. That's how a subpoena works. The reason this Court has asserted, has required that as the bare minimum, except in the very limited Berger context, is that when you hand the subpoena, the person who receives the subpoena says, this is an unusual case. I'm going to go to the trouble of objecting. I think I can tell a judge and prove to a judge that this is law enforcement in disguise. He could say the same thing without the subpoena. Yes, but that's our critical point, is that this guarantees him the right to say that to a judge. And I'm glad that you answered. It allows him the opportunity, while the policeman is getting a subpoena, to fill in the name of the person in what is otherwise a blank space. Mr. Chief Justice, he's not going to get a subpoena. Subpoenas don't work that way. Subpoenas are issued. Well, I thought you said that if he serves a subpoena, the other person can demand judicial pre-enforcement, judicial review. That's correct. So the police officer has to go somewhere to get the judicial review with whoever the hotel owner sends. Well, it might not work that way, and that is the hotel office, the hotel owner may have to file a motion to quash. It's not particularly important to your hypothetical. Mr. Chief Justice, here's the problem with that argument. It is important, because we're trying to figure out how this works. The policeman goes with the subpoena, the hotel owner says, I object. Yes. Now what happens? He files. How long does it take? It doesn't take any amount of time, which is why the Court has consistently required it. And that is, he says, I'm not going to give you the records, I'm going to file a motion to quash. If the police want to enforce it right away, they can go to an administrative judge and ask that it be enforced right away. Okay. They go somewhere. Yes. Okay. During that time, doesn't the hotel clerk take his pen and say, I didn't register this guy in room 2, I'm going to get in trouble, and he fills in whatever is left to be filled in? No, for the reason given by Justice Kagan, and that is you can sequester the records. And that is, the question is searching the records. That is, we're talking about a set of cards. And if this is a real concern, now, I will say it is a concern made up by the city's lawyers in this Court when, at trial, they did not introduce any evidence of this. And it would be equally applicable in every kind of required record. The same is true in a construction site or a fair labor site. So in a standard construction subpoena, if you object, you say, well, I'm going to take these records and keep them in the police car trunk until we resolve this? Yes, you can do that. There are two ways. Then there's authority for that? I'm sorry? There's authority from this Court? Sure. It's very similar to what this Court has said in the Fourth Amendment context. Remember, when the police show up at someone's house and they're concerned about the destruction of evidence inside, what they do is simply sequester. It seems to me that's much more intrusive than the scheme you're objecting to. Justice Kennedy, I don't think the government can have it both ways. These are our private records, okay? And they want to do something incredibly unusual that the Fourth Amendment forbids, and that is they want to have a scheme that doesn't say when they'll search or the purpose they'll search. Scalia, that's absolutely right. The other side makes a good point, and that is these are business records that receive reduced Fourth Amendment protection. We understand that. So did the unanimous court in Lone Steer. What it said is that's the reason we don't have a probable cause requirement here. That's why we require the minimum amount of judicial process, which is the prospect that if the owner has a good objection, they can go to a judge. That's why we don't have the Fourth Amendment's full protections. But remember that if the owner can be sequestered by the police officer, you gave an answer before that suggested you have to have some outside approval. But now you're saying if the hotel owner says you can't have these records, the police can say, give me the books and take them away. Yes. They cannot inspect them. They cannot inspect them.   They cannot inspect them. So if the owner wants to just hold them aside, if this is a real problem, which there's no evidence of, but if they want to just hold them aside, then that, they can be just sequestered. Nobody looks at them until the judge decides. Sotomayor, that's a seizure. That is a seizure. Right. Absolutely. Why is that justified in the — and looking at the information not? This Court has held that in the identical circumstance, this arises in the Fourth Amendment, that if the owner has sufficient evidence before it can acquire a warrant, it can sequester the property. That is, it can seize control of the property without searching it. Now, that's if it has probable cause. Well, Your Honor, it has the relevant level of cause that's required in the particular context. The — I'm confused by your answer. I thought you said in response to my earlier questions that the City could have a regime under which an administrative law judge issues a warrant, not a subpoena, for a periodic inspection. Sure. So the officer would have the warrant, would go to the hotel, here's the warrant, this is your periodic inspection. There would be no prejudicial review. That is — that's not correct. There could be a challenge to it later. No, Your Honor. When the — what this Court has said in cases like Camara and C, and it's the distinction drawn in Lone Star and Barlow's, is that when you get the pre-enforcement judicial review, that is the judicial involvement that's required. Right. Right. So we'd be perfectly happy with that. The difference between your hypothetical and this one is that a judge is involved and ensures that this isn't for law enforcement. It's the orderly operation of administrative scheme. Whereas what the City wants is for a beat cop to be able to go in at any time, as often as he wants, for any purpose. The complexity of the answers, and frankly, the surprise I have at some of your answers, may indicate that this is not a basis for a facial — not a case for a facial attack. Okay. It seems to me we have to go back and — and — and decide these issues on a case-by-case basis. Well, Justice Kennedy, I'll give you my responses to that, obviously. And that is, the Court in all of the Colonnade line of cases and Camara cases has dealt with things on a categorical basis. It has never done it on a case-by-case basis, because it is, look at the structure of the scheme. That is, this is a scheme where they're not going to have any reason — they don't need any justification to come in. We know what they can seize. It's delimited, right? It's a particular record, but they can do it any time. And in that kind of scheme, what the Court has consistently insisted on, and I hope that the Court will take a look at Lone Steer, is that there be this minimum of a subpoena process. I'm just describing — I'm sorry. I thought the stronger answer would be we've always looked at a lack of procedural protection under a facial challenge. We did.  Sotomayor That's Cibran. Cibran says exactly. Sotomayor Exactly. So any time that the challenge is to the lack of process, we've looked at it facially or as applied, whatever, but it doesn't need to be as applied. Yes. And let me just add one other point that's sort of underappreciated in the case, and that is, not only does our complaint assert an as-applied challenge, there was a trial on the as-applied challenge, and the record on the as-applied challenge is the record in this case. We pursued our facial challenge only after, before the second trial. They stipulated that they had only facial defenses of the statute. That's the reason we have this oddity that we're here on a facial challenge. The evidence has already been collected. There's nothing to be gained by having a second trial. Scalia Would you — you've constantly said that one of the objections that the hotel owner can make is that you want these records for enforcement of the criminal law, right? You say that's bad. Yes. But the whole purpose of this thing is to enable the criminal law to be enforced, isn't it? Justice Scalia, there are two different points that are being made here. One is, you're quite right. They have an administrative scheme. The point of the administrative scheme is to deter criminal violations. But my point is different, and that is, imagine on Tuesday a police officer comes in and says, look, I think there's a prostitute in room 3, okay? So what I'm going to do is I'm going to invoke this 4149 and see if that person's name matches up as a prostitute, okay? That's criminal law enforcement. It requires probable cause. The fact that they have an underlying administrative scheme doesn't mean that they can investigate crimes through using this evidence. This Court has said time and time again in its administrative decisions that it's really important that we involve the courts because there is this concern. And this case presents it more starkly than any other that you will misuse the administrative process. Scalia Well, I think there may be an exception to that principle where the whole purpose of the scheme is to enable the detection of criminal activity. And then the objection would be the whole scheme is bad. You cannot require them to keep books because its whole purpose is to detect criminal activity. But that's not what you're arguing. You say they can keep the books in order to detect criminal activity, but if they request the book in order to detect criminal activity, it's bad. That doesn't make any sense at all. Goldstein Because it's not the argument. And that is the argument is their defense of the statute is not that the records are used to detect crime. It's they're used to deter crime. They don't look at the records to find criminals. All they do is look at the records to make sure we're keeping records. My point is that one day a police officer under this, and it can happen regularly, is that a beat officer will come in and say, I'm not concerned about whether you filled out the form. I think there might be a prostitute in room 3 and use it for criminal law enforcement. Kagan I mean, Mr. Goldstein, I don't think that an equally important purpose behind these laws is to, as you said earlier, prevent harassment, prevent, I don't like this hotel owner, I want to drive this hotel out of business, I'm going to be showing up in his lobby every day. But that's part of what's going on here, isn't that right? Goldstein That's, in fact, the principal thing that this Court's precedents have pointed to. And just look at what's missing in this ordinance. Every time the other side will say to you, look, we identify specifically the records. But the question isn't what the records are. It's the loss of the sense of tranquility provided by the Fourth Amendment. That we don't know how frequently and for what harassing purpose and how, and for what reasons at all, that a police officer is just going to come in over and over again. Scalia Have we used that phrase before? Goldstein Which one, Your Honor? Scalia Tranquility? Goldstein I don't think that that word is. I'll give you the other one. Scalia We talk about privacy and all that, but I'm not sure that the Fourth Amendment should be expanded to protect the sense of tranquility. Scalia I'm trying to— Scalia I have a problem imagining tranquil hotel owners. I just— Goldstein No, I'm just trying to convey— Scalia I associate with owning a hotel. Goldstein It is the sense of certainty that the Fourth Amendment provides that what you do know is that there are going to be limits on when the police come in and say, show us your papers. Okay? And that's what we're talking about. Scalia I think there's some rule, at least they do it. I mean, in hotels, they have these notices posted all over about where the first emergency exit is and all that. Goldstein Yes. Roberts And could police come in and check to make sure the hotel has those posted? Goldstein Yes. Roberts Without any type of a warrant? Goldstein Because they're in public spaces. That is to say— Roberts Well, I don't know. Is the back of a hotel room door? I mean, is that a private place? Goldstein So you're saying, say, for example, in the back of the restaurant, in the back of the kitchen, for example. Roberts No, no. I'm talking about every hotel room has one of those. Goldstein Yes. Oh, inside the room. Roberts And they go and say, look, you know, this is a very important thing to make sure people don't die in a big fire. We're going to make sure you've got them. Let me go look in Rule 12 where nobody is. Goldstein It's a great example for us. That's actually Camaro NC. That's a fire inspection regime. And what has to happen is that there has to be a subpoena ahead of time. At the very least, this Court, the lowest level, the lowest standard the Court has ever applied is in a case called Dewey. And what Dewey said is, at the very least, if you're not going to involve a court, you have to have a set of rules about when these searches are going to apply, are going to be conducted, and how often. This is a— Alito I don't quite understand your answer about harassment. Maybe it's because — maybe this is in the record, or maybe it's because this wasn't as applied. But the police, even if this ordinance were invalidated, the police could show up whenever they wanted, couldn't they, and ask for the owner or the person at the desk voluntarily to disclose their register. So there could be — they could be in the lobby as much as they want. Goldstein Right. Alito So exactly what does — how does this aid in harassment of hotels? Goldstein Because of the fact that they're requiring us to produce private records. The Court — it was always the case, in cases like Barlow's, Camarasi, where the police couldn't show up and inspect the premises, they could still show up and harass. But what the Court said is if you were going to invade privacy, we agree this is — everyone agrees now this is a Fourth Amendment search. Alito No, but it's a private — it's a public space. I don't know whether it's dispositive, but it's of some relevance. So they walk in — here are two scenarios, one with the ordinance, one without.  The first one is they come in and they say, let us see the register, you show them the register, and what? It's a harassment because they sit there for a while and the guests coming in see the police in the lobby? I just don't understand factfully. Goldstein It's the fact that day after day after day we have to give them our private information. And it really will involve the problem that it can harass and be intended to pose      Now, that's not going to put us out of business. If our customers are in the — let's imagine the following scenario, and, you know, we are put in this position because they've come up with this hypothetical — these hypotheticals about when it could be valid. The officers see someone come into the motel, and each time they see someone come into the motel, they come in and say, hey, we're the police, let us see the records. It really can interfere. If you just imagine the case. Ginsburg But if you have a case-specific example, that might be one thing. But maybe it would help if you can tell me what goes on in this pre-compliance judicial review. Goldstein Yes. Ginsburg So the hotel owner says, sorry, you can't look up the registry. I want pre-compliance judicial review. Goldstein Yes. Ginsburg What is the nature of that review? Goldstein This Court has considered that question in the Fair Labor Standards Act context, the tax context, and the banking context. So California bankers, Donovan and Lone Steer. And what it has said is that the administrative agent with a, you know, the police officer, whoever enforces the law, don't have to go to a judge, gives a one-page subpoena. Then there is an objection by the business owner in any of these contexts. And remember, in banking, these are records that the government requires you to produce. And then what happens is that the — what generally will be the rule, it's up to the city, is that the city will put the onus on us to go to a judge. And the fact that the onus is on us to go to a judge, and the fact that our objections are very limited, which is to say we only get to object that this is harassing her for law enforcement, means that we almost always give over the records because it's going to be a completely futile objection. But it is the prospect that we can go to a judge that tells the beat cop that he needs to behave and act. And then there are other objections that would be successful harassment and using this for law enforcement. Yes. That's detailed in this Court's precedents, including Barlow's. It is what the — that's the rule of Camara N.C. How many of these Court's precedents involve a business that has been treated like a public utility? I mean, there are requirements for hotels, how big the room has to be, how many people you can put in the room. Even in many locations, how much you can charge for the rooms. The hotel owner is not like a private business. He is a regulated provider of public services that has traditionally been regulated closely over the years. The short answer — the first question you ask is how many times have you been asked that question. The answer is none. The second answer to your question is that, but in the relevant sense, which is to the extent that this property is protected and private, is that, overwhelmingly, hotels have constitutional protections. Remember, 95 percent of this hotel is going to be the guest rooms. And unlike in cases like Berger — remember, they go out and search the open junkyard — unlike cases like Colonnade and Biswell, where you inspect the open stores or even go behind the scenes, here the police can't do it. The Fourth Amendment, everybody agrees, protects privacy at the hotel. And so there is a much greater expectation of privacy on our part. But I think that the question that Justice Scalia is asking is, is there a reason to think that hotels are a more heavily regulated industry than all the other industries that we can think of? No. I mean, just think about California bankers and Miller are cases involving banking. Banking is incredibly heavily regulated. You have to have a charter. The government requires you to keep all kinds of records. And in both of those cases — and remember, Justice Scalia, those are the bank customer's records. They're about the bank customer's transactions. And what this Court said in both of those cases is that with rare exceptions, like the $10,000 requirement, Title I of the Bank Secrecy Act is constitutional because it requires a subpoena. That is, there is the prospect of getting a judge involved if the bank secrecy requirement that the investigation is too onerous. I'll give you one other data point. Kennedy. But innkeepers have been regulated not for decades, but they've been regulated for centuries, and they have duties to the public that are enforceable. Yeah. And I'm just puzzled by this case. You concede that the records have to be kept. There are very few reasons for keeping those records other than law enforcement. That we disagree with, Justice Kennedy. Remember, we've kept these records and innkeepers have kept these records for time immemorial. We use these records for very different purposes. They are every record of our business transaction. We use this information to keep in touch with our customers. Every business does. It's quite proprietary information. And while it's the case that we, that Motel 6 does this, geez, I've never received anything from them. My goodness. You may not be in their frequent guest program, sir. But nobody doubts. Remember, this is an ordinance that applies to the Four Seasons and the Ritz-Carlton and everything else. They've just carved out a very specific subset. And, Justice Kennedy, while we are attentive to the point that you can't – we are not asserting, and the guests are not asserting Fourth Amendment rights here, let's not lose sight of the fact that these records can show very, very personal information, not just the driver's license information, but whether you stayed at a hotel during a religious or a political convention. Scalia, here's the point. They agree this is a Fourth Amendment search, point one. Then what you are doing is you have to make an honest assessment of whether this is a Fourth Amendment value of privacy. And it does, because this has private stuff in it. There's just no real dispute about that. And I am sympathetic, Justice Kennedy, to the fact that innkeepers have been regulated for a long time. I will simply say that in 99.4 percent of the jurisdictions in this country, this is not the rule. There are 100, but there are 18,000 other jurisdictions in which this is not the rule and apparently has never been the rule. And the nature of that regulation isn't one that, in the Berger sense, impinges on our sense of privacy. We have to take guess, but what does that tell us about whether our records are private? And certainly we can identify a huge array of other businesses that are regulated. The one data point I wanted to make is that in 2002, the Department of Justice did a study, and it found that 335 different provisions of Federal law use the system that I just described for you, and that is the subpoena first in order to get the records. And there was a bare handful of them, none of them involving just bare records, with the possible exception of the OCC, that used this exception that says you never have to get a judge involved. It is a subpoena. It is. 99.4 percent jurisdictions. Does that include – are you comparing a little hamlet in India to Los Angeles or New York? I mean, does New York City have something like this? I think – I don't know the answer to the question of that particular city, but, Your Honor, they're including big and small and so am I. So there are a lot of big cities that don't have this rule. My point is this, Justice Kennedy. But you're saying, oh, the hotel has a private interest because it wants to know who its customers are. But they can do that by keeping their own record consensually. You have conceded that they can require the information as a matter of law. Well, that's because your precedents say they can, Your Honor. And my point is this. Because your precedents say that you can't do it here, Justice Kennedy, they can do it everywhere. I mean, it's true. And hence my answer, yes. But my point is this. Because they can do it here, Justice Kennedy, they can do it everywhere. The government can require any business to keep track of all of its transactions and all of its customers. And if the government can then just say, all right, now give us all that information, then they've reduced the Fourth Amendment to a nullity. The final point I'll make is that don't be confused with the idea that there's something special about hotels. The amount of government regulation here is massive. The reason that the deputy solicitor general is here on behalf of the United States is that there are hundreds and hundreds and hundreds of regulatory schemes the Federal Government administers where it is now required to use a subpoena. But what self-respecting regulator wouldn't love just to be able to do that? Alitono, your subpoena is worthless when what is sought is something that can be easily destroyed, hidden, or falsified. It's very useful if you're trying to get complicated records that can't be easily altered between the time when the subpoena is issued and the time when the subpoena is enforced. But nobody issues a subpoena for the murder weapon that one is, you know, that you suspect is in somebody's house. So if these records are more like the murder weapon or there's something that can be easily falsified, as you seem to concede when you say that the police can seize them, then the subpoena is worthless. Lone steer says the opposite with all respect, and that is the records there are how many hours did someone work at what amount of pay. And if you can't falsify that just as quickly as you can falsify who's in Room 2, then I just don't understand the nature of recordkeeping. The Court has insisted on this as a bare constitutional minimum, both to keep the enforcement officer in line and to let us know the enforcement officer is kept in line. It has not been attentive to the fact that we don't want to put undue burdens on the government, and that is it's just a subpoena, and that we have less than Fourth Amendment rights. Alito, do you think payroll records in general are no more complicated than the ledger at a motel that rents by the hour? In the relevant respect, Justice Alito, if the question is did the person work 50 hours or 35, and the record says 50, the actual record would be 50, and I just want to fill in 35, yes. The Court didn't even think that that was a remotely plausible argument in the line of cases that I'm describing. Thank you, counsel. Four minutes, Mr. Rosenkranz. Thank you, Your Honor. Let me start with the facial point and then circle back to the merits. So as I hear Mr. Goldstein describing the rule, the only objections that are going to be raised are harassment and whether this is for a legitimate purpose. But if that's the concern, that's a classic as-applied challenge. If a hotel has a cop coming up to them five times a day, they come in and say, this is really harassment, these searches are inappropriate. And if the – if it's the purpose of the officer, he's doing criminal investigation rather than actually caring about whether my records are complete, that is an as-applied challenge. Now, the plaintiffs have not even tried to demonstrate that this ordinance is unconstitutional in every circumstance. On pages 19 to 20 of our brief, we develop numerous scenarios, and Mr. Goldstein mentioned only one of them. So, for example, where the hotel is required to upload the records to the police department every day, it may not even be a search, but it's certainly less intrusive. But that's not the statute. I didn't understand those examples, because some of those examples, the police could act without this, without this. Well, so not that one, Your Honor, and Justice Kennedy, not that one. So some of them, in some of them, the ordinance has the purpose of requiring someone to do something that they would not otherwise have to submit to. But the one that I just gave as an example, the scenario of uploading the documents rather than the police conducting a search on the spot, is less intrusive. And the problem here is that the plaintiffs have tried to invalidate every possible application of this ordinance, but they haven't done the intrusiveness, privacy, government interest balance that one needs to do for each of them. But let me then circle to the merits, because I'm still very confused about this.  I'm confused about the merits of a warrant, even a Fourth Amendment warrant, of going into the home. Exigent circumstances, there's someone sick on the other side, if there's a fleeing felon into the place, but that doesn't eliminate the need for a warrant. It's not a tell-us-later issue. Police can't just keep going in and then fish around for an excuse. That's a process issue. Understood, Your Honor. You're entitled to a warrant. You're entitled to a subpoena. You're entitled — that's what they're challenging, which is, they're not challenging all of the other reasons why the police could go in legitimately, with the exception to the Fourth Amendment. They're asking whether this kind of search, generally, without all of those other exigent circumstances or other Fourth Amendment exceptions, is constitutional. Right, Your Honor. Is the process here right? Understood. And so let's not talk about the exceptions. Let's talk about another example, where the motel continues to keep the register in the open, like they did for 100 years, and then snatches it away when the police come. You know something? But that's a different issue. It's in the public. Well, right. And they would — And how long do you think that's going to happen? And for that reason, they would have no expectation of privacy, and the Fourth Amendment calculus would be totally different. But let me — But then it's not a search at all. And once again, it's not this statute that's doing the work. Well, no, Your Honor. If they snatch it away, it certainly is this ordinance that is doing the work. You're saying that they have no expectation of privacy. We wouldn't — we wouldn't say it's a search at all and the police can take it away. It doesn't depend on this statute. Well, no, exactly. We would win the Fourth Amendment case, but they would — but that has been invalidated by deciding this on a facial basis. Counsel, our question is intuited on your rebuttal time. Why don't you take an extra minute or so? Thank you, Your Honor. So let me just emphasize that this is a very narrow rule that we're talking about. We're talking about a rule that is unlikely to be repeated in so many of the other circumstances that have been discussed today. It's about an inspection of only a single book of information that the government requires hotels to maintain and that Mr. Goldstein has admitted the government should — can require hotels to maintain. It's in a context that is especially prone to criminality. People are using these hotels precisely to commit crimes where the gaps are quite detectable in real time, but not detectable otherwise. In an industry where there's been hundreds of years of regulation, including a history of warrantless searches that are even broader at the time of the founding, hotels were being searched without warrants at the time of the founding, and a history of a hundred years of police inspections in Los Angeles itself, and even a hundred years of these things being open to the public. If the Court has no further questions, we respectfully request that the Court reverse. Thank you, Counsel. The case is submitted.